**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

DANNY SARTIN,             )
                                 )
    **Plaintiff,**         )
                                 )
    **vs.**                  )     **Civil Action No. CV 00-S-2579-NE**
                                 )
**RED WING SHOE COMPANY, INC.,** )
**LEE NOREEN; DOROTHY NOREEN;** )
**ADDISON SHOE COMPANY; MUNRO** )
**& COMPANY,**            )
                                 )
    **Defendants.**      )

FILED
02 AUG 12 PH 4:3[?]
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
AUG 12 2002

## MEMORANDUM OPINION

Plaintiff, Danny Sartin, sued defendants — Red Wing Shoe Company, Inc., Lee and Dorothy Noreen,[1] and Addison Shoe Company, a Division of Munro & Company[2] — alleging that he was injured by defective, steel-toed shoes which were manufactured and/or sold by defendants.[3] He has asserted claims for negligence, violation of the Alabama Extended Manufacturer's Doctrine ("AEMLD"), misrepresentation, and breach of warranty (implied and express).[4]

---

[1] Lee and Dorothy Noreen were added to this action by the Amended Complaint filed on January 10, 2001, to replace the entity designated as the "Red Wing Shoe Store":

> Lee and Dorothy Noreen . . . were doing business as Red Wing Shoe Store, the distributor, retailer, marketer, advertiser, and seller of work shoes manufactured by the defendant Red Wing Shoe Company. The Noreens d/b/a Red Wing Shoe Store sold Mr. Sartin the shoes that are the subject of this complaint.

Doc. no. 10 (Amended Complaint) ¶ 4, at 2.

[2] Doc. no. 11 ¶¶ 4-5.

[3] Doc. nos. 1, 10, 11.

[4] Doc. nos. 1, 10, 11.



This action now is before the court on defendants' motions for summary judgment.[5] Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, evidentiary submissions, and briefs, this court concludes that Red Wing Shoe Company's motion for summary judgment is due to be granted in

---

[5]Doc. nos. 23, 27, 40.

part and denied in part, and that the motions for summary judgment filed by defendants Addison and

Lee and Dorothy Noreen are due to be granted.

## I. SUMMARY OF FACTS

Plaintiff, who is diabetic, purchased a pair of steel-toed, work shoes from the "Red Wing

Shoe Store" located in Huntsville, Alabama, on or about May 26, 1998. That store is owned by

defendants Lee and Dorothy Noreen. The shoes sold to plaintiff were manufactured by defendant

Addison Shoe Company, a division of Munro & Company, but distributed under the "Red Wing"

trade name.[6]

Prior to the date of that purchase, the little toe on plaintiff's left foot had become infected

and, ultimately, was amputated.[7] Plaintiff's treating physician, Richard C. Burnside, M.D., released

him to return to work about five months after the amputation,[8] but with the restriction that he "*not*

wear steel-toed shoes because of the risk of infection resulting from his diabetes."[9] However,

plaintiff's employer, AKZO, required all of its employees to wear steel-toed shoes,[10] and demanded

that plaintiff do so as a condition of returning to work.[11] Pam Toliver, an AKZO employee, sent

plaintiff to Alabama Orthotics Prosthetics ("AOP") to purchase a pair of custom-fitted steel-toed

shoes.[12] Plaintiff also had a prescription from Dr. Burnside for the steel-toed shoes from AOP.[13]

---

[6]Doc. no. 11; doc. no. 23, Exh. A.

[7]Doc. no. 23, Exh. B at 12-13.

[8]*Id.*

[9]Doc. no. 33, Exh. E (emphasis supplied); *see also* doc. no. 23, Exh. B at 15, 17-18.

[10]Doc. no. 23, Exh. B at 15.

[11]Doc. 23, Exh. B at 19.

[12]*Id.* at 20.

[13]*Id.* at 21.

The shoes from AOP were estimated to cost around $ 900.[14]  AKZO agreed to *reimburse* plaintiff for the cost of the custom-fitted shoes, but plaintiff did not have sufficient financial resources to purchase the shoes in the first instance.[15]  Plaintiff claims that an AOP salesman told him that he would be better off if he went to the Red Wing or "just for feet" shoe stores, where he could purchase acceptable shoes for far less money.[16]  Neither AOP, nor the unnamed salesman, is a party to this action.

In any event, plaintiff did go to the "Red Wing Shoe Store"in Huntsville, Alabama, on May 26, 1998.[17]  As previously noted, that store is owned by defendants Lee and Dorothy Noreen.[18] Plaintiff testified that he told a salesman at the store that he was diabetic, and that AOP had directed him to Red Wing, because "[it] could fix [him] with shoes as good as [AOP] could."[19]  According to plaintiff, the salesman replied:  "I believe we can," or "I'm sure we can."[20]  Plaintiff tried on twenty-six pairs of steel-toed shoes,[21] before finding a pair that "felt good."[22]  The salesman asked whether the shoes hurt his feet and plaintiff said, "No."[23]  Plaintiff says the salesman said:  "I guarantee you these won't make a blister on your feet or won't hurt your feet."[24]  Plaintiff purchased

---

[14]*Id.*

[15]*Id.* at 22.

[16]*Id.* at 20.

[17]*Id.* at 20, 24.

[18]Doc. no. 28, Exhs. A & B.

[19]Doc. no. 23, Exh. B at 25, 88.

[20]*Id.* at 25.

[21]*Id.*

[22]*Id.* at 26-27.

[23]*Id.* at 89-90.

[24]*Id.*at 25.  Plaintiff later contradicted this statement, testifying that the salesman did *not* tell him that the shoes would not cause a blister, only that the shoes would not hurt his feet.  *Id.* at 94-95.

the shoes, Red Wing Model no. 6654.[25]  The shoes were marked with the trade name "Red Wing Shoe."[26]

After purchasing the shoes, plaintiff took them to Dr. Burnside,[27] who stated that he preferred that plaintiff not wear the shoes, because of his diabetic condition.[28]  Plaintiff told Dr. Burnside that he had to wear steel-toed shoes; otherwise he would not be able to return to work at AKZO.[29]  For that reason, Dr. Burnside "reluctantly approved" the shoes, because plaintiff "insisted that he must return to his job."[30]

Plaintiff knew he needed to wear a specific prosthetic shoe.[31]  He knew that the shoes purchased from the Red Wing Shoe Store were not the prosthetic shoes prescribed by Dr. Burnside.[32]  Further, no one ever told plaintiff that Red Wing shoes were designed for diabetics, or were good shoes for diabetics.[33]

---

[25]Doc. no. 28, Exh. D.

[26]Doc. no. 33, Exh. F, p. 8

[27]Doc. no. 23, Exh. B at 27.

[28]*Id.* at 29.

[29]*Id.* at 29-30.

[30]Doc. no. 33, Exh. E.

[31]Doc. no. 23, Exh. B at 76-77.

[32]*Id.* at 78-80.

[33]*Id.* at 131.

Plaintiff wore the shoes for about three months.[34] During this time, he inspected his feet each morning.[35] He did not have a great deal of feeling in his feet,[36] and the shoes were not comfortable during this three-month period.[37]

On September 14, 1998, plaintiff experienced a burning sensation in his left foot and, on inspection, he found a blister on the big toe.[38] Plaintiff contends that, as a result of complications related to that blister, his left leg ultimately was amputated below the knee.

The steel-toed shoes purchased by plaintiff had been developed as a production shoe for Red Wing Shoe Company in 1994,[39] and, although manufactured by defendant Addison Shoe Company, they bore the trade name "Red Wing." The shoe was designed and marketed to provide comfort, while also providing toe protection from impact or compression.[40] It was not marketed as an adequate substitute for custom-fitted, prosthetic devices.[41] In excess of 50,000 pairs of that shoe have been manufactured and shipped since production began, and Addison has had no other complaints of fit or injury with that model.[42]

---

[34]*Id.* at 31.

[35]*Id.* at 32,

[36]*Id.* at 32, 34.

[37]*Id.* at 34.

[38]*Id.* at 36-37.

[39]Doc. no. 23, Exh. A.

[40]*Id.*

[41]*Id.*

[42]*Id.*

Plaintiff presented expert testimony from Geza F. Kogler, Ph. D., that the blister, or foot ulcer, on the top of his big toe was "largely a result of ill-fitting and inappropriate shoe wear."[43] Kogler further stated in an affidavit:

> I believe there is sufficient evidence to suggest that the Red Wing Shoe (Model 6654 9E steel toed shoe) worn by [plaintiff] is defective and was a contributing factor to the formation of a foot ulcer that subsequently resulted in amputations of his foot and leg. The defects of the Red Wing Shoe that I believe attributed to the injuries sustained by [plaintiff] are :1) the position and orientation of the steel toe guard relative to "normal" foot morphology[;] 2) the size and shape of the steel toe guard relative to "normal" foot morphology[;] 3) the shape of the shoe last related to "normal" foot morphology[;] 4) the shoe manufacturing process that formed the leather upper over the shoe last and steel toe.[44]

## II. DISCUSSION

Defendants have filed motions for summary judgment, asking the court to dismiss all claims asserted by plaintiff.[45] For the reasons set forth below, the court finds that the motions of defendants Addison Shoe Company and Lee and Dorothy Noreen are due to be granted, and all claims against those defendants dismissed. Red Wing Shoe Company's motion for summary judgment is due to be denied as to plaintiff's AEMLD claim, but granted as to all other claims.

### A.    Defendant Addison Shoe Company, a Division of Munro & Company

Plaintiff presented no argument in opposition to Addison's motion for summary judgment.[46] Issues and contentions not raised in a party's brief are deemed abandoned. *See, e.g., Chapman v. AI Transport* 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before

---

[43]Doc. no. 33, Exh. A at 3.

[44]*Id.*

[45]Doc. nos. 23 (Addison); 27 (Lee and Dorothy Noreen); 40 (Red Wing Shoe Company).

[46]See Doc. no. 42.

summary judgment is granted, not afterwards."); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is be treated by the district court as abandoned)).

> In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986). There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. . . .

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (some citations omitted). *Cf., e.g., Lucas v. W.W. Grainger, Inc.* 257 F.3d 1249, 1255 n.1 (11th Cir. 2001) ("Lucas has abandoned his unlawful harassment claim by not raising it in his initial brief on appeal.") (citing *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317 n.17 (11th Cir. 1999) ("Issues that are not clearly outlined in an appellant's initial brief are deemed abandoned.") (citations omitted)); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that clearly are not designated in the initial brief ordinarily are considered abandoned.") (quotation marks and citation omitted); *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned."); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989). Accordingly, plaintiff's claims against defendant Addison Shoe Company, a Division of Munro & Company, are due to be dismissed.

**B.    Defendants Lee and Dorothy Noreen**

-8-

The Noreen defendants contend that all claims against them are time-barred.  They contend that the statute of limitations for plaintiff's claims against them began to run on September 14, 1998, the date on which plaintiff discovered the blister on his left foot, and, thus, all claims against them had to be filed, if at all, on or before September 14, 2000.  *See* Alabama Code § 6-2-38(*l*) (1975) (1993 Replacement Vol.) (two year statute of limitations for all action for injury to the person not arising from contract).

Plaintiff's original complaint was filed on September 13, 2000.  The only parties named as defendants in that complaint were the "Red Wing Shoe Company Incorporated" and the "Red Wing Shoe Store."  Summons for service of those defendants by means of certified mail were issued on September 18, 2000.  A return on service for the Red Wing Shoe Company, in Minnesota, was filed on September 28, 2000;[47] no return of service for Red Wing Shoe Store was ever filed.

In an answer filed on October 10, 2000, on behalf of the Red Wing Shoe Company "and the Defendant designated as RED WING SHOE STORE," counsel stated that:

> Defendant RED WING SHOE COMPANY INCORPORATED is a non-resident corporation with its principal place of business located in Minnesota. *That entity designated as the RED WING SHOE STORE was not the entity selling the boots to the plaintiff.  That company was Lee & Dorothy Noreen d/b/a RED WING SHOE STORE.*[48]

Plaintiff did not immediately amend his complaint, however.  Rather, he delayed fully three months, until January 10, 2001, before filing an amended complaint substituting Lee and Dorothy Noreen for the "Red Wing Shoe Store."  Further, Lee and Dorothy Noreen were not served until March 27, 2001.

---

[47]Doc. no. 3.

[48]Doc. No. 4, ¶ 2, at 1 (italicized emphasis added).

A federal court exercising jurisdiction on the basis of the parties' diversity of citizenship applies state law relation-back rules to amendments of complaints, where state law provides the applicable statute of limitations. *Saxton v. ACF Industries, Inc.*, 254 F.3d 959, 963 (11th Cir. 2001) (en banc), *overruling Wilson v. Navistar Int'l Transp. Corp.*, 193 F.3d 1212, 1213-14 (11th Cir. 1999). Alabama's relation-back rule for an amended complaint substituting a new, named defendant for a previously named, non-fictitious defendant states:

> (c) **Relation Back of Amendments**. An amendment of a pleading relates back to the date of the original pleading when
>
> . . .
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2)[49] is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Ala. R. Civ. P. 15(c)(3) (footnote added); *see also Davison v. Pogue*, 735 So.2d 1240, 1243-44 (Ala. Civ. App. 1999) (holding that a change of defendant relates back "only if, within 120 days of the filing of the original complaint, [the newly-named defendant] (1) received notice of the institution of the action, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against her"). Here, the Noreens did not receive notice of plaintiff's claims until March 27, 2001, more than 120 days after the filing of the

---

[49]Rule 15(c)(2) states that the claim or defense asserted in the amended pleading must arise out of the conduct that is set forth in the amended complaint. Ala. R. Civ. P. 15(c)(2).

original complaint.[50]   Accordingly, plaintiff's amended complaint does not relate back, and the claims against defendants Lee and Dorothy Noreen are due to be dismissed.

## C.   Defendant Red Wing Shoe Company Incorporated

Defendant Red Wing Shoe Company has filed a motion for summary judgment asking the court to dismiss all claims asserted against it.  Plaintiff filed an opposition to defendant's motion, but only as it relates to his AEMLD claim; he has not opposed summary judgment on his other claims against Red Wing Shoe Company.[51]  Again, therefore, for the reasons previously discussed, this court finds that plaintiff has abandoned all other claims against defendant Red Wing Shoe Company.

Defendant Red Wing Shoe Company contends that it is entitled to summary judgment as to plaintiff's AEMLD claim because "there is no causal relation in fact between [defendant's] activities in connection with handling the product and its defective condition."[52]  The so-called "lack of causal relation defense" is an affirmative defense to claims under the AEMLD.  *See Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 134 (Ala. 1976); *Atkins v. American Motors Corp.*, 335 So. 2d 134, 143 (Ala.1976); *see also Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1219 (S.D. Ala. 1998).  This defense is the only ground asserted by Red Wing Shoe Company as a basis for summary judgment on plaintiff's AEMLD claim.[53]  The defense is not available to defendant, however, as the shoes at issue in this case bore the defendant's trademark and tradename.  *See Casrell*, 335 So. 2d at 134 (holding that lack of causal relation defense is not available "to a

---

[50]As previously noted in text, the record does not contain evidence that the original complaint was ever served on the "Red Wing Shoe Store" located in Huntsville, Alabama.

[51]*See* Doc. no. 49.

[52]Doc. no. 41 at 7.

[53]*Id.* at 7-8.

-11-

defendant who distributes a product under its trade name") (citing *Sears, Roebuck & Co. v. Morris*, 273 Ala. 218, 136 So.2d 883, 884 (1961) (holding that the lack of causal relation defense was not available under Alabama's previous, "manufacturer's liability doctrine" to a defendant that distributed, but did not manufacture, the allegedly defective product under its trade name) (in turn citing *Restatement of Torts* § 400 ("one who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer")).

Therefore, defendant Red Wing Shoe Company's motion for summary judgment as to plaintiff's AEMLD claim is due to be denied. Defendant Red Wing Shoe Company's motion for summary judgment as to plaintiff's other claims — negligence, misrepresentation, and breach of warranty — is due be granted and such claims are due to be dismissed.

An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this ___12th___ day of August, 2002.

_____
United States District Judge